George JONES, George Jones, Sr., Betty Jones, Plaintiffs,

v.

CITY OF CHICAGO; Cook County; Richard Brzeczek; Richard M. Daley; James Houtsma; Victor Tosello; Milton Deas; Dennis McGuire; Ray McNally; John McCabe; Mary Ann Furlong; William Binkowski; Sgt. Davis; Sgt. Palmer; Dept. Chief Reilley; Lt. Griffith, Det. J. Kelly, Defendants.

No. 83 C 2430.

United States District Court, N.D. Illinois, E. Division.

March 24, 1986.

Haas & Taylor, Chicago, Ill., for plaintiffs.

Robert W. Fioretti, Fobert L. Janega, John M. O'Malley, James D. Montgomery, Terry L. McDonald, Ass't St.'s Att'y, Chicago, for defendants.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Plaintiffs, George Jones and his parents, bring this suit seeking compensatory and

punitive damages arising out of George Jones' arrest and prosecution for the May, 1981 rape and murder of Sheila Pointer and for the aggravated battery of Sheila's brother, Purvis Pointer. Defendants, City of Chicago, several City of Chicago police officers,[1] Richard Daley (State's Attorney), and Cook County have all filed motions to dismiss the plaintiffs' complaint.

### FACTS

On May 4, 1981, 13–year old Sheila Pointer was raped and murdered. Sheila's 10–year old brother, Purvis Pointer, was severely beaten. Purvis was taken to a hospital and did not regain consciousness until May 11, 1981. Purvis was interviewed by defendant police officers on May 11, 1981. When questioned about his assailant, Purvis told the defendant police officers that there was one intruder, a "gangbanger", whose complexion was lighter than Purvis'. Purvis also told the officers that the offender's first name "might be George". (Complaint ¶ 23)[2]

Following this interview the defendant police officers secured a photograph of George Jones. On May 11th, Purvis was shown the photograph of George Jones. Purvis acknowledged that he recognized George Jones but did not identify Jones as the intruder. (¶ 24)

On May 12, 1981, defendant police officers returned to the hospital with the picture of George Jones. (¶ 25) Following their meeting with Purvis, defendants arrested George Jones (¶ 26) and interrogated him without benefit of an attorney and without permitting him to speak with his parents. (¶ 26) George Jones was brought to Purvis' hospital room for a one-person show-up (¶ 27) on May 12, 1981. Defendant police officers asked Purvis if George Jones was the man who struck Purvis and his sister. In response to the defendants' question, Purvis stated, "No, that's not the man, that's not the man, no, no, no." (¶ 28) Despite this unequivocal response defendant police officers continued to prompt and encourage Purvis to change his answer. Purvis did amend his answer to, "Yes, no, yes, no." (¶ 29) George Jones was charged with the crimes. (¶ 30)

Plaintiffs further allege that defendants presented false, misleading and incomplete testimony to the Cook County Grand Jury, which returned indictments against George Jones for murder, rape, aggravated battery, home invasion, deviate sexual assault, burglary, armed violence and armed robbery. (¶ 30) George Jones was imprisoned for over a month until his family was able to raise and post a $7,500.00 bond. (¶ 30)

During pre-trial conferences, defendant officers allegedly maliciously suppressed from the plaintiff and his attorneys several police reports and memos containing exculpatory evidence clearly exonerating George Jones. (¶ 30) Throughout the course of pre-trial proceedings, and during their case-in-chief, defendants represented that all reports on the case had been turned over to the court and to plaintiff's counsel.

At trial, Frank Laverty, a detective who had participated in the Pointer investigation, came forward to testify. Laverty revealed that he had written two reports concerning the investigation and sent the reports to Area 2 detectives and to his Commanding Officer. These memos set forth numerous facts establishing Jones' innocence and suggested the guilt of another suspect. (¶ 36) Laverty testified that he was told to remain silent about what he had learned. Laverty testified that his Commanding Officer locked Laverty's report in a desk drawer. (¶ 37)

Following Laverty's testimony in open court, Jones' attorney again subpoenaed all documents and police reports and specifically requested the files mentioned by Lav-

---

1. The City of Chicago defendants presenting the motion to dismiss are: Richard J. Brzeczek, James Houtsma, Victor Tosello, Milton Deas, Dennis McGuire, Ray McNally, John McCabe, Mary Ann Furlong, Ray Binkowski, Alvin Palmer, James Reilley, John Griffith and John Kelly.

2. The "facts" contained herein are alleged facts. The paragraph reference is to plaintiff's complaint.

**150**

erty. Defendants produced the "street file" on the Pointer homicide. The "street file" contained fourteen reports which had not previously been disclosed to Jones. (¶ 38) During the trial it was also revealed that favorable laboratory results were withheld from George Jones. (¶ 39)

On the basis of the suppression of evidence a mistrial was declared. The State's Attorney nolle prosequed the case on April 16, 1982. (¶ 41)

## THE COMPLAINT

Plaintiffs have filed a complaint with this court alleging violations of 42 U.S.C. §§ 1981, 1983, 1985(2)(3), 1986; and the Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth and Fourteenth Amendments, against the City of Chicago, several of its police officers, Richard Daley and the County of Cook. Plaintiffs also assert pendent State claims of false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress.

Plaintiffs have voluntarily agreed to dismiss all alleged violations of their Fifth, Eighth and Ninth Amendment rights. After a thorough review of the relevant case law and the parties' motion to dismiss and supporting memoranda, this court finds that the plaintiff, George Jones, has sufficiently pleaded a cause of action against the various named City of Chicago defendants and the City of Chicago, under 42 U.S.C. § 1983, for the period of time in which George Jones was incarcerated based on a deprivation of his Fourth Amendment rights. However, plaintiff's allegations under 42 U.S.C. § 1983 against the named City of Chicago defendants and the City of Chicago for incidents occurring after George Jones' release from jail on bond, are dismissed. Plaintiff has not sufficiently pleaded any violations of the Sixth, Thirteenth and Fourteenth Amendments or 42 U.S.C. §§ 1981, 1985(2)(3). These claims as pleaded do not state a claim upon which relief can be granted and are, therefore, dismissed. Further, all claims against Richard Daley and the County of Cook are dismissed. The plaintiff's

parents' claims are also dismissed for failure to state a claim upon which relief can be granted. George Jones' pendent State claims are not time-barred and are sufficiently well-pleaded against the City of Chicago and the named City of Chicago defendants.

## DISCUSSION

In considering the sufficiency of a complaint on a motion to dismiss, the court must accept as true all well-pleaded material facts in the complaint and must draw all reasonable inferences in the light most favorable to the plaintiffs. To dismiss a civil rights complaint, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

## THE CITY OF CHICAGO DEFENDANTS AND

## THE CITY OF CHICAGO MOTION TO DISMISS

### 1983 CLAIMS

Title 42 U.S.C. § 1983 creates an action for damages and injunctive relief against individuals and governmental bodies who deprive persons of rights, privileges or immunities "secured by the Constitution and laws." The statutory prerequisites under § 1983 are first, that the alleged conduct must have been under color of law, and second, that the plaintiff must have been subjected to a deprivation of a right secured by the Constitution. 42 U.S.C. § 1983. The plaintiff must also prove that the defendant was the cause in fact of plaintiff's deprivation.

In *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the United States Supreme Court broadly described the purpose of § 1983 on the following terms: "... the very purpose of § 1983 was to interpose the federal courts between the states and the people from unconstitutional action under color of law." Despite this broad description of the purpose of § 1983, courts have limited the

availability of § 1983 remedies in two situations that are applicable to this case. First, case law provides that where adequate post-deprivation State remedies exist for due process violations, the State has done all that it is required to do procedurally and no cognizable claim exists under § 1983. Parties who have suffered tortious injury are not entitled to § 1983 relief merely because the defendants are government officials. *Friedman v. Village of Skokie,* 763 F.2d 236 (1985); *Jackson v. Byrne,* 738 F.2d 1443, 1445 (7th Cir.1984); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Second, to assert a claim against a municipality under § 1983, the plaintiff must allege that the acts complained of were carried out pursuant to an inter-related policy, practice, and/or custom of the municipality. *Monnell v. Dep't. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ Plaintiff has sufficiently alleged a deprivation of his Fourth Amendment right to be free from unreasonable search and seizure as against the City of Chicago defendants and the City of Chicago. Plaintiff, George Jones, asserts that he was arrested and jailed without probable cause as a result of the Chicago Police Department's policy of suppressing exculpatory material. These policies are sufficiently well-pleaded under *Monnell* and do state a cause of action under § 1983 for the period of time plaintiff was jailed.

■ This court finds, however, that George Jones has not sufficiently pleaded any other cognizable violation of his Constitutional rights. In *Christman v. Hanrahan,* 500 F.2d 65 (1974), the Seventh Circuit reviewed a § 1983 claim based on suppression of evidence. The court stated that in order to determine whether a complaint has alleged a deprivation of a federally protected right, it is necessary to identify the precise right that a plaintiff seeks to vindicate. The court considered two distinct theories regarding suppression of exculpatory evidence. The court reasoned, "on the one hand, we might say that an accused person has a federal right to immediate

disclosure upon request of material evidence favorable to the defense; any temporary failure to honor such a request, even if totally harmless, would violate that right. On the other hand, we might define the federal right at stake as the right to a fair trial and not regard the temporary withholding—as of federal significance—regardless of its consequence as a basis for discipline as a matter of law—unless it tainted the fairness of the trial viewed as a whole." *Christman,* 500 F.2d at 67. Under the former view, the court reasoned, "Due process clause would provide generalized protection against misdeeds by the police or prosecution; under the latter view, the mission of the clause would be the avoidance of an unfair trial to the accused and no violation would result unless the misconduct had some prejudicial effect on the defense." *Christman,* 500 F.2d at 67.

■ The Seventh Circuit adopted the latter view stressing the paramount importance of the fairness of the trial opposed to the lesser significance of punishing misdeeds of prosecutors. This court will follow the Seventh Circuit reasoning in *Christman* and, therefore, find that George Jones was not deprived of his Sixth Amendment right because his trial was fundamentally fair. A mistrial was declared and the prosecutors dropped the charges against plaintiff. No cause of action exists under § 1983 for violations of George Jones' Sixth Amendment rights.

■ Further, this court finds that plaintiff, George Jones, has not sufficiently pleaded any violation of his Fourteenth Amendment right to equal protection of the laws. Plaintiff is under the mistaken impression that to state a cause of action it will suffice to add the catchall phrase "with racial animus" to almost every allegation in his complaint. The court is particularly impressed, however, with the fact that plaintiff did *not* allege any racial animus with regard to his *Monnell* policy claims. Specifically, in Count VI, George Jones details his *Monnell* policy claim against the City. George Jones does not plead that race was a factor in the application of the

policies. Furthermore, plaintiff does not allege that any of the officers were motivated by racial considerations in their treatment of plaintiff and application of the *Monnell* policies. If plaintiff contends that the officers were motivated by racial considerations or that the policies were discriminatory, he must plead in a manner that puts defendant on notice of these claims. While it is true that a complaint brought under a federal civil rights statute should be liberally construed, *Pearlswig v. Randolph*, 497 F.Supp. 569 (D.C.Mass. 1980), vague and conclusory allegations of race discrimination may not form the basis of a complaint. Plaintiff's allegation of violations of the Equal Protection Clause of the Fourteenth Amendment are dismissed.

Plaintiff's common law tort claim of malicious prosecution does not give rise to a federal Constitutional wrong remedied by 42 U.S.C. § 1983. Neither the Fourteenth Amendment nor The Civil Rights Act purported to secure a person against unfounded or even malicious claims or suits in State courts when the law and courts of the State are available and furnished adequate remedies to a person aggrieved. *Curry v. Regan*, 257 F.2d 449, 450 (5th Cir.1958), *cert. denied*, 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 85 (1958); cited in *Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187 (5th Cir.1978). State law is available to plaintiff and provides an adequate remedy for malicious prosecution in this case. The plaintiff's § 1983 claim for malicious prosecution is dismissed.

### 1981 CLAIMS

For the reasons stated above, plaintiff's § 1981 claims are also dismissed. Plaintiff has not sufficiently alleged a denial of equal protection or benefits of the law. A § 1981 claim cannot survive on bare allegations of a denial of equal protection. Plaintiff has not sufficiently alleged that he was deprived of the "full and equal benefit of all laws and proceedings for the security of persons and property *as is enjoyed by white persons* " and not subjected "to *like* punishment, pains, penalties, taxes,

licenses and exactions of every kind." 42 U.S.C. § 1981. From the face of the complaint it appears that there was no differentiation based on race in the application of the *Monnell* policies.

### 1985(2), (3), 1986 CLAIMS

Plaintiff's claim under 42 U.S.C. § 1985(2), (3) must also fail for the reasons discussed above. Plaintiff correctly states that the racial animus of any one of the key conspirators is sufficient to establish the denial of equal protection of the law under § 1985, *Bell v. City of Milwaukee*, 746 F.2d 1205, 1259–1260 (7th Cir. 1984), yet plaintiff does not allege racial animus nearly to that specificity. Plaintiff does allege the conspiracy sufficiently and he does assert that the conspiracy was designed to obstruct or defeat justice. However, the 1985(2), (3) claims must fail because plaintiff provides only conclusory allegations that the conspiracy was designed to deny him equal protection of the laws. *Lowe v. Letsinger*, 772 F.2d 308 (1985); *Bach v. Schott*, 357 F.Supp. 1125 (N.D.Ill.1973); *Schoonfield v. Mayor and City Council of Baltimore*, 399 F.Supp. 1068, *affirmed*, 544 F.2d 515 (D.C.MD. 1975). Plaintiff's § 1986 allegations are dismissed without prejudice as § 1986 is a derivative claim of § 1985. *Williams v. St. Joseph Hospital*, 629 F.2d 448 (7th Cir. 1980).

### PLAINTIFFS' PARENTS' § 1983 CLAIMS

George Jones' parents have not stated a claim under § 1983 upon which relief can be granted. This court does not agree with plaintiffs' analogy of this case to *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984), or any of the cases plaintiffs rely upon to support their claim. The cases plaintiffs rely upon, for the most part, involve custody disputes or death of a child. The instant situation can hardly be analogized to *Duchesne v. Sugarman*, 566 F.2d 817 (2nd Cir.1977) (a case cited by plaintiffs). In *Duchesne*, the city bureau failed to obtain judicial approval of a decision to

retain custody of two children. The mother of the children was entitled to allege a § 1983 cause of action because the mother herself was denied due process. It is true that in numerous contexts liberty interests in preserving the integrity of the family unit have been upheld. However, plaintiffs have not shown the specific nature of the Constitutional rights recognized in those situations to be analogous to the rights claimed by plaintiffs. These claims do not rise to the level of Fourteenth Amendment guarantees and, therefore, the parents of George Jones have not been deprived of any Constitutional rights.

### PLAINTIFF'S PENDENT STATE CLAIMS

Plaintiff, George Jones', pendent State claims are not timebarred. The relevant date for calculating the statutory period should be April 16, 1982, the date the State's Attorney nolle prosequed the charges against George Jones. It does offend the principle of comity for a Federal District Court to inquire into a pending State criminal proceeding. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

The court finds that the plaintiff, George Jones, has sufficiently pleaded State tort claims of false imprisonment, false arrest, malicious prosecution and intentional infliction of emotional distress. Plaintiff's parents have not sufficiently pleaded a claim for intentional infliction of emotional distress. George Jones' parents cannot recover for emotional distress based on defendants' action against George Jones.

Furthermore, the City of Chicago cannot be held liable for punitive damages in a pendent action, pursuant to Ill.Rev. Stat., ch. 85, § 2–102.

### STATE'S ATTORNEY RICHARD DALEY'S

### MOTION TO DISMISS

The instant case is one of a series of cases to be brought challenging the use of secret "street files" by the Chicago Police Department. In most of these cases, the plaintiffs assert that unofficial street files containing exculpatory information were not produced during discovery and thereby violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Plaintiffs generally seek money damages for this violation from the City of Chicago, its police officers, State's Attorney and Cook County. Richard Daley correctly points out in his motion to dismiss that no claims against Carey, Daley or their assistants have been sustained against motions to dismiss. This court agrees with the findings of this District and grants defendant Daley's motion to dismiss.

A court may dismiss a complaint only if it appears that no relief can be granted under any set of facts that could be consistent with the allegations. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Allegations of malicious prosecution and abuse of process against a prosecutor fall within the scope of the prosecutor's absolute immunity. Ill. Rev.Stat., ch. 85, § 2–201 (1983); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). All of the allegations in plaintiff's complaint pertain to prosecutorial acts of misconduct associated with the judicial phase of the criminal process and are within the scope of the prosecutor's absolute immunity. *Talley v. Crosson*, 663 F.2d 713, 721–722 (7th Cir.1981). Because the prosecutors are immunized, Daley cannot be liable by either respondeat superior or vicarious liability. Daley also cannot be held liable for conspiracy to do what he has an absolute privilege to do. *Hamilton v. Daley*, 777 F.2d 1207 (7th Cir. 1985).

Accordingly, all claims are dismissed against Richard Daley. Plaintiff's claims under § 1985(2), (3) and 1986 are not pleaded sufficiently against the City of Chicago, its police officers or Richard Daley. Daley is also protected from suit from State law claims by his absolute immunity.

## COOK COUNTY'S MOTION TO DISMISS

 Section 1983 liability cannot be predicated on respondeat superior in this case. *Monnell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). *Monnell* requires the municipal corporate entity to bear direct responsibility for plaintiff's injuries before it can be held liable. The municipal corporation's own actions must have caused the harm to plaintiff. The County of Cook has no statutory involvement powers or duties regarding criminal prosecutions by the State of Illinois and, therefore, cannot have caused plaintiff's alleged harm. Prosecutorial duties and functions in the State courts cannot be performed by a municipality, its officers or anyone other than the State's Attorney. Ill.Rev.Stat., ch. 38, § 112–6(a); ch. 14, §§ 4, 5. Plaintiff's alleged injuries are attributable to independent City policemen and immune prosecutors. The Illinois State criminal justice system is not a County concern.

The County of Cook has no prosecutorial policy and, therefore, did not cause plaintiff's alleged injuries. All claims against the County of Cook are dismissed.

## CONCLUSION

Plaintiff, George Jones', § 1983 claims against the City of Chicago and its police officers are dismissed for the period of time after plaintiff's release from jail. Plaintiff's alleged violations of his Fifth, Sixth, Eighth, Ninth, Thirteenth and Fourteenth Amendments are dismissed. Plaintiff's 1981, 1985(2), (3) claims are dismissed. Richard Daley and the County of Cook are dismissed. Plaintiff's parents' claims under § 1983 and for intentional infliction of emotional distress are dismissed. Plaintiff's Fourth Amendment claims under § 1983 for the period in which he was incarcerated remain. Plaintiff's pendent State claims remain.

IT IS SO ORDERED.