Jean STOKES, et al., Plaintiffs,

v.

CITY OF CHICAGO, et al., Defendants.

No. 86 C 4759.

United States District Court,
N.D. Illinois, E.D.

May 22, 1987.

Rick M. Schoenfield, Ettinger & Schoenfield, Ltd., Chicago, Ill., for plaintiffs.

Judson Minor, Corp. Counsel, City of Chicago by Kenneth Cummings, Asst. Corp. Counsel, Richard M. Daley, State's Atty. of Cook County by Joseph D. Ryan and James D. Egan, Asst. State's Attys., Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

Before this court is a motion to dismiss defendants Beuke, Reukert, and the County of Cook from plaintiffs' Third Amended Complaint. Plaintiffs' suit is brought pur-

suant to 42 U.S.C. § 1983. For the reasons stated herein, this court grants defendants' motion to dismiss them from the complaint. Plaintiffs' claims against the remaining defendants are still viable.

## FACTS

Plaintiffs' Third Amended Complaint contains only a sketchy presentation of the facts surrounding this suit. On February 14, 1986, defendants and several unknown Chicago police officers authorized or committed one or more of the following acts: "knocked down" the doors to the plaintiffs' homes; entered the plaintiffs' homes without their consent; detained the plaintiffs; searched the plaintiffs' homes; threatened the plaintiffs; and seized certain property. Plaintiffs believe that defendants' conduct violated plaintiffs' Fourth and Fourteenth Amendment rights.

Plaintiffs also allege that certain Assistant Cook County State's Attorneys wrongfully arranged for cash payments to be made to certain prospective witnesses. These witnesses were allegedly paid thousands of dollars to influence their testimony against William "Flukey" Stokes in Stokes' murder trial. These payments were made despite the prosecutors' knowledge that the influenced testimony against Stokes would be false.

## DISCUSSION

### A. Cook County State's Attorney

The United States Supreme Court addressed the issue of prosecutorial immunity in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In *Imbler*, the Supreme Court held that prosecutors enjoy absolute immunity from § 1983 liability for acts performed within the scope of their quasi-judicial roles as advocates in initiating a prosecution and presenting a State's case. *Id.* at 430–31, 96 S.Ct. at 994–95 (1976).

The Supreme Court noted that absolute immunity leaves "the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Id.* at 427,

96 S.Ct. at 993. The Supreme Court balanced the injustice associated with the accused's deprivation of liberty against society's need to have a prosecutor exercising his duties with courage and independence. Absolute immunity is granted so that a prosecutor is not harassed by vexatious litigation causing a deflection of the prosecutor's energies from his public duties. Absolute immunity also eliminates the possibility that the prosecutor would shade his decisions to avoid retaliatory litigation instead of exercising the independence of judgment required by the public trust.

The *Imbler* Court stated that a prosecutor is guaranteed absolute immunity from those activities which are intimately associated with the prosecutor's role as an advocate within the judicial phase of the criminal justice process. However, the Supreme Court expressly qualified its opinion. The *Imbler* Court refused to speculate whether a prosecutor was granted absolute immunity from those activities stemming from the prosecutor's role as an administrator or as an investigative officer.

The Seventh Circuit has clarified the uncertainty surrounding the *Imbler* Court's decision. In *Henderson v. Lopez*, 790 F.2d 44, 45 (7th Cir.1986), the Seventh Circuit stated that state's attorneys enjoy "a qualified immunity when performing administrative or investigative duties, but an absolute immunity when performing a quasi-judicial role." When determining which type of immunity a state's attorney enjoys, a district court must look to the nature of a state's attorney's function in a particular case. *Id.* at 46.

The first issue before this court is whether the alleged wrongful acts of defendants Beuke and Reukert were committed while participating as advocates within the judicial phase of the criminal process, or while participating as an administrator or investigator.

Defendants argue that the claims against Beuke and Reukert must be dismissed because they enjoy absolute immunity. Defendants contend that the alleged wrongful acts stem from the prosecuting attorneys initiating and pursuing a criminal prosecu-

tion, and from presenting the State's case. Defendants assert that they were performing quasi-judicial functions.

Plaintiffs counter that the defendants were functioning in an investigative or administrative capacity, not in a quasi-judicial capacity. Consequently, plaintiffs believe defendants should not be granted absolute immunity, and therefore Counts XI and XIII state viable causes of action.

The Seventh Circuit has given a broad reading to *Imbler* when determining what activities constitute quasi-judicial functions. *Henderson v. Lopez*, 790 F.2d 44, 46 (7th Cir.1986). These qualifying activities are protected by absolute immunity because they are intimately associated with the prosecutor's role as an advocate.

In *Daniels v. Kieser*, 586 F.2d 64 (7th Cir.1978). The Seventh Circuit was confronted by a prosecutor who made false statements to the court in an attempt to obtain a material witness' arrest warrant. The *Daniels* court held that the prosecutor was entitled to absolute immunity. The court reasoned that the prosecutor acted to guarantee the prospective witness' appearance at trial, and hence the prosecutor was attempting to prove all elements charged in the indictment.

The Seventh Circuit readdressed the absolute immunity issue in *Heidelberg v. Hammer*, 577 F.2d 429 (7th Cir.1978). There the court encountered allegations that prosecutors induced witnesses to commit prejury. In addition, prosecutors allegedly destroyed and falsified a line-up report and police tapes of incoming calls. Nevertheless, the *Heidelberg* court held that any claim against the prosecutors based on these allegations is barred by the doctrine of absolute official immunity. These claims were dismissed.

Finally, the Seventh Circuit once again addressed the issue of absolute prosecutorial immunity in *Hampton v. Hanrahan*, 600 F.2d 600, 633 (7th Cir.1979). The *Hampton* court was confronted by prosecutors that allegedly engaged in the deliberate preparation of perjured testimony. The court held that the prosecutors' actions constituted a "failure to prevent conduct which was essentially indistinguishable from the prosecutorial activity encapsulated in the allegations in *Heidelberg*." Consequently, the *Hampton* court felt compelled to conclude that the prosecutors enjoyed absolute immunity from liability arising out of the preparation of perjured testimony.

■ The instant court follows the guidance provided by the Seventh Circuit in *Heidelberg* and *Hampton*. This court finds plaintiffs' § 1983 claims against Beuke and Reukert barred by the doctrine of prosecutorial immunity. Plaintiffs set forth eleven separate incidents of prosecutorial misconduct in paragraph 6 of Count XI. However, each incident is limited to an allegedly unlawful act of defendants designed to induce certain individuals to testify against Willie "Flukey" Stokes in his murder trial. Defendants allegedly agreed to pay these prospective witnesses for giving false testimony placing Stokes in a bad light. This court holds that defendants' conduct in attempting to influence these prospective witnesses was an attempt to induce these witnesses to commit perjury. However, the Seventh Circuit has previously declared such conduct is intimately associated with the judicial phase of a prosecution. *See Heidelberg v. Hammer*, 577 F.2d 429 (7th Cir.1978), and *Hampton v. Hanrahan*, 600 F.2d 600, 633 (7th Cir.1979). Therefore, all of the allegations in plaintiffs' complaint pertain to prosecutorial acts of misconduct associated with the judicial phase of the criminal process. These activities constitute quasi-judicial functions. Consequently, defendants are entitled to absolute immunity.

■ Finally, plaintiffs are ineffective in their attempt to characterize defendants' conduct as conduct performed by defendants in their investigative or administrative capacity. Plaintiffs merely make unsupported, broadside assertions that the prosecutors were acting as investigators or administrators. Complaint at Count XI, ¶ 5. This court does not believe a plaintiff can circumvent a defendant's absolute immunity defense simply by making bald assertions that a prosecutor committed various

wrongs while acting as an investigator or administrator. To allow such an allegation to defeat the prosecutor's immunity without presenting supporting allegations would emasculate the Supreme Court's holding in *Imbler*.

Accordingly, this court grants defendants Beuke and Reukert's motion to dismiss them from plaintiffs' Third Amended Complaint.

### B. County of Cook

The County of Cook argues that it cannot be held liable for the unconstitutional conduct of certain Assistant Cook County State's Attorneys. Cook County contends that it and the Office of the State's Attorney are separate and distinct governmental units possessing distinct powers and duties. Cook County maintains that assistant state's attorneys cannot be viewed as county officials. Consequently, Cook County asserts that it cannot be liable for practices, policies, or actions which were established, affirmed, or authorized by assistant state's attorneys. In sum, Cook County believes that assistant state's attorneys lack the requisite authority to establish county policy, and therefore § 1983 liability cannot attach to the County.

Plaintiffs counter stating the assistant state's attorneys are county officials. Plaintiffs note that the budget of the Cook County State's Attorney's Office emanates from budget appropriations made by the County of Cook. Next, plaintiffs argue that these prosecutors were county officials authorized to establish the official policy of Cook County with respect to matters of unconstitutional payments to prospective witnesses. This court disagrees.

Municipal liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). The *Pembaur* Court held that the decision-maker must make a deliberate choice to follow a course of action; this choice must be made from among various alternatives by the official or officials responsible for establishing final policy with respect to the

subject matter in question. *Id.* 106 S.Ct. at 1300.

Authority to make municipal policy may be granted directly by constitutional and legislative enactment, or may be delegated by an official who possesses such authority. Governmental entities often spread policymaking authority among various officials and official bodies. Policy-makers have authority to establish binding municipal policy and authority to adjust that policy for the municipality in changing circumstances.

■ The fundamental question before this court is whether an assistant state's attorney possesses the authority to establish binding county policy with respect to witness preparation for criminal trials. This court finds that a prosecutor does not possess the authority to establish county policy because the prosecutor acts on behalf of the state and the People of Illinois when prosecuting criminal cases. The prosecutor's actions are independent of the county and county board. The State's Attorney establishes his own policy for witness preparation as a state official. The preparation of trial witnesses is not a concern of the County of Cook. The county board has neither the authority to establish policy for the State's Attorney nor the power to delegate prosecutorial duties to the State's Attorney. The County of Cook cannot establish a prosecutorial policy. *Jones v. City of Chicago*, 639 F.Supp. 146, 154 (N.D.Ill.1986). The County of Cook has no statutory involvement powers or duties regarding criminal prosecutions. Prosecutorial duties and prosecutions in the state courts are performed by the State's Attorney and not by the county board. Ill.Rev. Stat., ch. 14, § 5 and ch. 38, § 112–6(e).

A court in the Northern District of Illinois addressed the issue of § 1983 liability imposed upon Cook County for unconstitutional conduct engaged in by Assistant Cook County State's Attorneys. *Jones v. City of Chicago*, 639 F.Supp. 146, 154 (N.D.Ill.1986). In *Jones*, plaintiff alleged that certain prosecutors presented false, misleading and incomplete testimony to the Cook County Grand Jury. The Grand Jury,

in turn, returned indictments against plaintiff for murder, rape, aggravated battery, home invasion, deviate sexual assault, burglary, armed violence, and armed robbery. The *Jones* court dismissed the claims against Cook County. The court held that Cook County did not have the authority to establish a prosecutorial policy and had no statutory duties regarding criminal prosecutions by the State of Illinois. Therefore, the court reasoned that liability cannot be imputed to Cook County requiring it to bear direct financial responsibility for unconstitutional acts committed by assistant state's attorneys. To impose liability in this instance would violate the Supreme Court's mandate in *Monell v. New York City*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that § 1983 liability cannot be imposed based on a respondeat superior theory.

A similar issue was resolved by a court in the Northern District of Illinois. *Williams v. State's Attorney of Cook County*, No. 84 C 3336 (N.D.Ill. Feb. 7, 1985). In *Williams*, the plaintiff brought suit against the Cook County State's Attorney and the Circuit Court of Cook County based on 42 U.S.C. § 1983. The court held that neither defendants were amenable to suit because both defendants were part of the state government and not the county government. The *Williams* court reasoned that the state lacks the capacity to be sued in a § 1983 action. Slip op. at 2, *citing Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Consequently, these defendants were dismissed from the case.

■ The state status granted assistant state's attorneys is analogous to the state status afforded judges of the Illinois Circuit Courts and the clerks of the Circuit Courts. *See County of Kane v. Carlson*, 116 Ill.2d 186, 107 Ill.Dec. 569, 507 N.E.2d 482, No. 63084 (Ill. Supreme Court, Feb. 20, 1987). The instant court finds compelling the fact that the Circuit Courts, clerks of the Circuit Courts, and state's attorneys are all established via the Judicial Article of the 1970 Illinois Constitution. Article VI, §§ 7, 18 and 19. In contrast, the Local Government Article of the Illinois Constitution establishes and lists the various county officials. However, neither the Circuit Courts, clerks of Circuit Courts, nor the state's attorneys are referred to in the local government article. State's Attorneys are treated in a similar fashion to judges of the Circuit Courts and clerks of the Circuit Courts presumably because state's attorneys are officers of the court and comprise an essential part of the system of justice. *In Re Appointment of Special State's Attorney*, 42 Ill.App.3d 176, 180, 1 Ill.Dec. 195, 199, 356 N.E.2d 195, 199 (1976). Consequently, this constitutional analysis leads this court to find that the state's attorneys are officers of the judicial branch of government. State's attorneys are state officials, not county officials, who are elected on a countywide basis.

In sum, the instant court holds that the state's attorneys are part of the state government when functioning in a prosecutorial capacity. Next, this court concludes that the assistant state's attorneys lacked authority to establish binding county policy in the instant case. The preparation of witnesses is not a county concern; it is in the sole province of the prosecutor. Therefore, the assistant state's attorneys' actions were acts of the state and not of the county. Accordingly, the county cannot be held responsible for the allegedly unconstitutional acts of these assistant state's attorneys. Consequently, this court grants the County of Cook's motion to dismiss it from plaintiffs' Third Amended Complaint.

## CONCLUSION

This court believes assistant state's attorneys Beuke and Reukert enjoy absolute immunity. Consequently, this court grants defendants Beuke and Reukert's motion to dismiss them from plaintiffs' Third Amended Complaint. In addition, this court believes the County of Cook cannot be held responsible for the allegedly unconstitutional acts of assistant state's attorneys who prepare a witness for a criminal trial. Accordingly, this court grants the County

of Cook's motion to dismiss it from plaintiffs' Third Amended Complaint.

IT IS SO ORDERED.