Sharon SELEP, Plaintiff,

v.

The CITY OF CHICAGO, a Municipal Corporation, Officer Richard Brueck, Officer Michael Kelly, Sgt. Anthony Priola, Officer Leonard Wilkes, Lt. James Begley, Officer James Sandow, Officer Giselle Pikor, Jerome Selep, Timothy Selep and Other Unknown Chicago Police Officers, Defendants.

No. 93 C 3353.

United States District Court,
N.D. Illinois, E.D.

Nov. 24, 1993.

cers who had him in custody, the City need not provide further discovery on this issue.

Neal Charles Zazove, Chicago, IL, for plaintiff.

James Patrick McCarthy, Susan S. Sher, Patrick J. Rocks, Jr., Justin Paul Erbacci, Margaret Ann Carey, Patricia Jo Kendall, Irene Schild Caminer, Taryn Springs, Robert C. Roth, City of Chicago, Law Dept. Corp. Counsel, and William Samuel Wigoda, Chicago, IL, for defendants.

Richard Brueck, pro se.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Sharon Selep brings this three count action claiming that the defendants violated her constitutional rights. Presently before the court is a motion to strike and/or dismiss portions of the complaint, brought by defendants Michael Kelly, Anthony Priola, Leonard Wilkes, James Begley, James Sandow, and Gisell Pikor. For the reasons set forth below, we grant in part and deny in part defendants' motion.

### I. Background [1]

The constitutional violations alleged in this case arose out of events occurring between June and December, 1992. Plaintiff Sharon Selep is the wife of defendant Jerome Selep, with whom she had one son, defendant Timothy Selep. Timothy Selep is married to Colleen Brueck, who is the daughter of defendant Chicago Police Officer Richard Brueck. According to the complaint, in June, 1992, Sharon Selep discovered that her son and husband and Richard Brueck were making and selling "black boxes" which decoded cable signals. She reported this conduct to her cable company, who in turn referred her to the Cook County State's Attorney's Office. She sent a letter to the State's Attorney detailing the illegal activities, and an investigation was subsequently begun by the City of Chicago.

In September, 1992, Colleen Brueck phoned Sharon Selep, who was living outside of Chicago at the time, and informed her of the ongoing investigation. She also warned Selep not to return to Chicago, and told her to "wait until you see what we will do to you." Nonetheless, Selep returned to her Chicago home on December 8, 1992. Throughout the day, Selep and Colleen

---

1. In considering defendants' motion to dismiss, we take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citations omitted). Accordingly, our recitation of the facts is based entirely upon plaintiff's complaint.

Brueck exchanged phone calls in which Brueck again warned Selep that Richard Brueck, Jerome Selep, and Timothy Selep were "going to do something" to her. At approximately 5:15 p.m., Richard Brueck and Jerome and Timothy Selep entered the home and threatened Sharon Selep, and when Sharon Selep attempted to call her father for help, Jerome Selep disconnected the phone. In addition, Richard Brueck removed a cable-decoding "black box" that had been attached to the Selep's television.

Within a few minutes, defendant Chicago Police Officer Michael Kelly and three unknown Chicago police officers arrived at the house and arrested Sharon Selep and charged her with criminal damage to property, based upon a criminal complaint signed by her husband, Jerome Selep. She was transported to the 16th District and then to the 25th District, where she was held for approximately four hours. The criminal charge against her was subsequently stricken, and no criminal charges are currently pending.

## II.  Discussion

### A.  Multiple Claims in Individual Counts

█ Defendants'[2] first objection to Sharon Selep's complaint is that she alleges numerous claims in each individual count, contrary to the guidance of Fed.R.Civ.P. 10(b). Defendants are correct. Count I alleges false arrest and conspiracy to falsely arrest, and Count II alleges false imprisonment and conspiracy to falsely imprison. While we do not condone this sort of muddled pleading, violation of Rule 10(b) does not itself provide the basis for dismissal of a complaint. *See, e.g., Pryor v. Cajda*, 662 F.Supp. 1114, 1116 (N.D.Ill.1987).

### B.  Lack of Notice/Conspiracy

█ As a corollary objection, however, defendants assert that Selep's complaint does not provide each defendant with notice of what constitutional violation that defendant allegedly committed. At least with respect to Priola, Wilkes, Begley, Sandow, and Pikor,

we agree. In order to hold an individual liable under § 1983, a plaintiff must demonstrate that the individual "caused or participated in an alleged constitutional deprivation." *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). Furthermore, to the extent a § 1983 action is directed against a supervisory official, "[w]ithout a showing of direct responsibility for the improper action, liability will not lie." *Wolf–Lillie*, 699 F.2d at 869. Here, it is absolutely impossible to ascertain from Selep's complaint the nature of the involvement of those defendants named above. Selep does not identify how any of these individuals "caused or participated in" any of the alleged constitutional violations. It is true that the complaint includes a general statement that these defendants "acting individually and in concert" violated Selep's constitutional rights by "committing" the acts she complains of. However, while the complaint alleges that defendant Kelly was present at Selep's house and actually arrested her, the complaint is utterly devoid of specific allegations with respect to the other defendants bringing this motion. Indeed, they are not even mentioned. Absent some indication of each defendant's individual participation in depriving Selep of any constitutional rights, there is no basis for retaining them in this lawsuit.

█ The same is true with respect to the conspiracy claims. We first note defendant's ancillary objections to Selep's conspiracy claims, which are predicated on 42 U.S.C. § 1985. Selep asserts that she has adequately alleged a § 1985 claim because she has "alleged that two or more persons combined to accomplish by concerted action a false arrest and imprisonment for their personal, unlawful purposes." Plaintiff's Memorandum of Law in Response at 8, *citing, Green v. Saenz*, 812 F.Supp. 798, 802 (N.D.Ill.1992). However, Selep's statements evidence a fundamental misunderstanding of § 1985. Although § 1985 is titled "Conspiracy to interfere with civil rights," it is not in fact the "conspiracy" counterpart of § 1983, as Selep seems to believe. Rather, to state a claim

---

**2.** For the purposes of this opinion, "defendants" refers only those defendants bringing the current motion to dismiss.

under § 1985(3), the only possible subsection at issue here, a plaintiff must include an allegation of "class-based, invidiously discriminatory animus." *Munson v. Friske,* 754 F.2d 683, 695 (7th Cir.1985) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). Allegations under § 1985 are thus clearly distinct from allegations under § 1983, which require no showing of class-based discrimination. Because Selep has failed to allege any class-based discriminatory animus, we grant defendants' motion to strike any claims arising under § 1985. Furthermore, because liability under § 1986 is derivative of liability under § 1985, *see Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 203 (7th Cir. 1985), we strike Selep's § 1986 claims as well.

■ This is not to suggest, however, that Selep is precluded from asserting a conspiracy to violate her civil rights. To establish a prima facie case of a § 1983 conspiracy, a plaintiff must demonstrate "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights, and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema,* 840 F.2d 437, 442 (7th Cir.), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988). These requirements are not predicated on language in § 1983, much less § 1985; rather, they are simply the necessary elements of any civil conspiracy, as applied to § 1983. *See Scherer,* 840 F.2d at 441. Indeed, despite her incorrect citation to § 1985, Selep at least recognizes that this basic test applies to her conspiracy claim, and asserts that she has alleged these essential elements. At least with respect to Priola, Wilkes, Begley, Sandow, and Pikor, we disagree.

Despite Selep's conclusory statement that the defendants acted "in concert," she has included no allegations from which an agreement to violate her constitutional rights could be inferred. Indeed, as noted above, the complaint fails to identify how these defendants were involved in the alleged constitutional deprivation, much less include allegations sufficient to even arguably support a finding of agreement. Without some indication of the acts that each individual defendant is alleged to have participated in, and some allegations which would allow an inference of agreement, utterly lacking in the current complaint, defendants Priola, Wilkes, Begley, Sandow, and Pikor do not have notice of the claims directed against them such that a responsive answer is possible. Accordingly, we dismiss all counts of the complaint to the extent that they are directed against Priola, Wilkes, Begley, Sandow, and Pikor.

■ However, we deny defendants' motion with respect to Officer Michael Kelly. As noted above, the complaint does assert that Kelly actually arrested Selep. In addition, Selep asserts in her Memorandum of Law in Response that, after entering her house but prior to arresting her, Kelly and an unknown officer went into another room to speak with defendants Jerome Selep and Richard Brueck.[3] Construing all inferences in Selep's favor, we find that these allegations justify denying Kelly's motion to dismiss. Kelly's private conversation with Jerome Selep and Brueck immediately prior to arresting her without a warrant provides a sufficient, if not terribly strong, basis for inferring the existence of a conspiracy to violate her constitutional rights, *See Green,* 812 F.Supp. at 802, and also provides Kelly with sufficient notice of his participation in the alleged constitutional violation. We therefore deny defen-

---

**3.** Defendants suggest that a statement in Selep's brief is insufficient to remedy the absence of allegations in her complaint from which an agreement can be inferred. However, in *Hrubec v. National R.R. Passenger Corp.,* 981 F.2d 962 (7th Cir.1992), the Seventh Circuit stated:

A plaintiff need not put all of the essential facts in the complaint.

He may add them by affidavit or brief—even a brief on appeal.

*Hrubec,* 981 F.2d at 963–64. Although we would prefer that plaintiffs amend legally insufficient complaints, *see Hrubec,* 981 F.2d at 965 (Flaum, J., concurring), we are nonetheless constrained by the majority in *Hrubec.* Accordingly, we will consider the assertions made in Selep's Memorandum of Law in Support.

dants' motion to dismiss Counts I and II with respect to Michael Kelly.

### C. Duplicative Pleading

■ Without citing any authority, defendants next assert that Count II (false imprisonment) should be dismissed because it is duplicative of the allegations of Count I (false arrest). However, as we have previously noted:

> This argument flies in the face of numerous Seventh Circuit cases noting the existence of a § 1983 claim for both false arrest and false imprisonment. *See Terket v. Lund*, 623 F.2d 29, 31 (7th Cir.1980) ("[c]onstrued liberally, [plaintiff]'s § 1983 complaint alleges a deprivation of liberty without due process through unlawful arrest, false imprisonment, and malicious prosecution"); *see also Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir.1989) ("the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution"); *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir.1985) (same). Unsupported assertions of law are seldom persuasive, and [defendant]'s bald conclusion in this area is no exception.

*Green v. Saenz*, 812 F.Supp. 798, 801 (N.D.Ill.1992) (footnote omitted). Accordingly, we reject defendants' contention that Count II should be dismissed as duplicative of Count I.

### D. Length of Detention

■ Defendants also assert that Count II should be dismissed because Selep was only detained for four hours. In support, defendants cite *Bostic v. City of Chicago*, 981 F.2d 965 (7th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 3038, 125 L.Ed.2d 725 (1993) for the proposition that detentions of up to forty-eight hours "will, as a general matter, comply with the promptness requirement of *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) ]" *Bostic*, 981 F.2d at 968 (quotation omitted). However, *Bostic* merely discussed whether the plaintiff bore the burden of proving unreasonable delay: if the detention is longer than forty-eight hours, the arrestee does not have to prove unreasonable delay; instead, the burden shifts to the government to demonstrate extraordinary circumstances. If the detention is *less* than forty-eight hours, the arrestee retains the burden of demonstrating that the detention was unreasonable. *Bostic*, 981 F.2d at 968, *citing County of Riverside v. McLaughlin*, 500 U.S. 44, ——, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49 (1991). *Bostic* therefore did not, as defendants seem to suggest, set a bright line for determining whether a particular detention amounted to a constitutional violation. Furthermore, *Bostic* and *County of Riverside* dealt with the length of detention before an arrestee obtains a judicial determination of probable cause, whereas the allegations in the current complaint deal with detention in the *absence* of probable cause. *See Davis v. Kirby*, 755 F.Supp. 199, 203 (N.D.Ill.1990) ("Indeed, [plaintiff] has stated a claim of false imprisonment under federal law, for to the extent that [defendant] arrested [plaintiff] without probable cause or a warrant, she falsely held [plaintiff] in violation of the Fourth Amendment."). We therefore deny defendants' request to dismiss Count II based upon the length of Selep's detention.

### E. Fourteenth Amendment

■ Defendants further object to Selep's inclusion of a Fourteenth Amendment due process claim, noting correctly that claims such as false arrest and false imprisonment are properly brought under the Fourth, rather than the Fourteenth, Amendment. *See, e.g., Green v. Saenz*, 812 F.Supp. 798, 801 (N.D.Ill.1992). Selep responds that she included reference to the Fourteenth Amendment merely to acknowledge that the Fourth Amendment has been applied to the states by incorporation. *See Brown v. State's Atty.*, 783 F.Supp. 1149, 1153 (N.D.Ill.1992). We therefore grant defendants' motion to strike Selep's Fourteenth Amendment claims in Counts I–III insofar as she seeks to assert a separate and distinct Fourteenth Amendment claim in those counts. *See, e.g., Green*, 812 F.Supp. at 801.

### F. Municipal Liability/Conspiracy

Finally, defendants move to strike those portions of Count III, entitled "Municipal

Liability," which purport to allege a conspiracy among the defendants. Selep responds that Count III is not directed against the individual defendants, but merely recites their actions as a basis for establishing the liability of the City of Chicago. Because Count III does not purport to state a cause of action against defendants, they lack standing to raise objections to its allegations. Accordingly, we deny defendants' motion to strike.

## III. Conclusion

For the reasons set forth above, we grant defendants' motion to dismiss all counts of the complaint to the extent they are directed against defendants Priola, Wilkes, Begley, Sandow, and Pikor, and grant defendants' motion to strike all claims under 42 U.S.C. §§ 1985 & 1986 and all separate and distinct claims under the Fourteenth Amendment. Defendants' motion to dismiss or strike is otherwise denied. It is so ordered.